IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **In re: SUSAN L. EBERHARDT,** | Chapter 7 |
| Debtor. | Case No. 20-31855-KRH |

## MEMORANDUM OPINION

This matter comes before the Court on the *Trustee's Objection to Debtor's Exemptions* [ECF No. 83] (the "Objection") filed by William A. Broscious, Chapter 7 trustee for the bankruptcy estate of Susan L. Eberhart (the "Trustee"), to certain asserted exemptions of Susan L. Eberhardt (the "Debtor"). On July 21 and 22, 2021, the Court conducted an evidentiary hearing (the "Hearing") on the Objection. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with its *Order Sustaining Trustee's Objection to Debtor's Exemption* [ECF No. 124] entered on August 6, 2021 (the "Order").

This Court has subject-matter jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B). Venue is appropriate pursuant to 28 U.S.C. § 1409.

Based on the evidence presented at the Hearing, the Court finds that the Debtor and Joseph P. Sullivan ("Mr. Sullivan") were married on January 23, 2014. Shortly after their marriage, Mr. Sullivan decided to purchase certain commercial real property known as 6102 Nine Mile Road, Richmond, Virginia, and contiguous property located at 13 Knight Drive, Richmond, Virginia (collectively, the "Real Property"). Mr. Sullivan liquidated his farm equipment and transferred the proceeds into an account in the name of the Debtor. The Debtor

then used the funds deposited into her account to purchase the Real Property in her name only. The Debtor testified that she became nervous about this transaction. A month after her initial acquisition, the Debtor transferred the Real Property by deed of gift to herself and Mr. Sullivan as tenants by the entirety. Mr. Sullivan and the Debtor created a property management company, Pelican Properties, LLC ("Pelican"), to manage the Real Property. Pelican collected rents generated from tenants that operated on the Real Property. The Debtor was established as the sole owner of Pelican, although Mr. Sullivan effectively ran the management company, in an ostensible attempt to shield the rents from Mr. Sullivan's creditors.

The Debtor and Mr. Sullivan began to experience difficulties in their marriage. The Debtor made attempts to extricate herself from the marriage. In early 2019, the Debtor submitted articles of cancellation on behalf of Pelican in order to remove herself from the management company. With the Debtor's knowledge and consent, Mr. Sullivan later reinstated Pelican as its sole member and manager.

In April 2019, the Debtor, through her counsel, commenced negotiations with Mr. Sullivan in anticipation of a divorce. The Debtor proposed to waive any right she might have to the Real Property. On February 3, 2020, the Debtor initiated a divorce proceeding (the "Divorce Proceeding") against Mr. Sullivan by filing a Complaint for Divorce (the "Divorce Complaint") in the Circuit Court for Charles City County (the "Circuit Court"). In the Divorce Complaint, the Debtor confirmed that she waived her right to equitable distribution of marital assets and debts pursuant to section 20-107.3 of the Virginia Code. Mr. Sullivan filed a *Motion to Request Leave of Court to File a Late Response to Complaint for Divorce* on April 1, 2020. Mr. Sullivan

attached a draft answer to his Motion. The draft answer included a counterclaim in which Mr. Sullivan demanded equitable distribution, spousal support, and attorneys' fees.[1]

After Mr. Sullivan filed his draft answer claiming a right to equitable distribution, the Debtor filed on April 7, 2020, (the "Petition Date") a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").[2] The schedules and statements annexed to the Debtor's petition disclosed the Debtor's ownership interest in, inter alia, (i) the Real Property,[3] titled as tenants by the entirety with Mr. Sullivan; and also (ii) a 2008 GMC Sierra Dooley Diesel Truck[4] (the "Vehicle"), titled solely in the Debtor's name.[5] The Debtor did not claim an exemption for either the Real Property or the Vehicle on her Schedule C filed with her petition.

The Trustee was appointed as the interim Chapter 7 trustee by the Office of the United States Trustee.[6] On May 11, 2020, the Trustee convened an initial meeting of creditors, which

---

[1] On or about June 8, 2020 – after the Petition Date (as defined herein) and only one week after the Debtor's adjourned meeting of creditors, the Debtor filed an answer to Mr. Sullivan's counterclaim in the Circuit Court. The Debtor again made no claim for equitable distribution in her answer.

[2] The Debtor was no novice to the intricacies of bankruptcy law. The Debtor was a fourteen-year veteran of the Office of the United States Trustee, which is the component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq. As such, she was well acquainted with the practice and procedures surrounding a Chapter 7 bankruptcy case. Hr'g Tr. 51:16-52:7, ECF No. 120 at 51-52.

[3] On the Petition Date, the Debtor stated, under penalty of perjury, that the Real Property was worth $458,200.00. See Sched. A/B pts. 1.1, 1.2, ECF No. 1 at 10-11. A year and a half later, on September 16, 2021, and as a product of this litigation, the Debtor filed amended schedules now claiming the Real Property to be worth $990,000.00. See Am. Sched. A/B pts. 1.1, 1.2, ECF No. 131 at 2-3. The Debtor has not provided an explanation as to why the Real Property more than doubled in value in such a short period of time.

[4] Mr. Sullivan owned the Vehicle when the parties were married. At some point during the marriage, the Vehicle was retitled without consideration into the Debtor's name only.

[5] "The commencement of a case . . . creates an estate" which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

[6] See 11 U.S.C. § 701(a). The interim trustee became the permanent Trustee in this bankruptcy case pursuant to section 702(d) of the Bankruptcy Code.

3

was subsequently adjourned to June 1, 2020.[7] In response to questions posed by the Trustee at the initial meeting of creditors, the Debtor testified under oath that she did not assert any rights in the Real Property or the Vehicle.[8] The Debtor stipulated to the following exchange wherein the Debtor and her counsel, Robert Roussos, confirmed her position during questioning of the Debtor again under oath at the adjourned meeting of creditors:

> Q    If -- is that Nine Mile Road property, which I understand was in your name, and then you transferred it to your name and his name, is that property subject to any property settlement agreement or discussions or negotiations in connection with the dissolution of your marriage?
>
> A    I don't -- I don't assert any interest in that.· I don't know -- I don't have any interest in it.  Not enough pleadings -- I think that Joe wants it to be deemed his property only.
>
> Q    Uh-huh.
>
> A    That's about all I know.
>
> Q    And you're not resisting that?
>
> MR. ROUSSOS:  Can I add something to that?
>
> MR. BROSCIOUS:  Yes, please.
>
> MR. ROUSSOS:  The divorce papers that I saw that, I guess that Alicia Finley filed, the complaint, indicated that Ms. Eberhardt was waiving any claim of equitable distribution.
>
> MS. EBERHARDT:  That's correct.
>
> MR. BROSCIOUS:  Okay.

---

[7] Fed. R. Bank. P. 2003(b)(1), (e).

[8] *See* Tr.'s Ex. 29, Req. for Admis. 15, ECF No. 113-29 at 10 ("At the Trustee's initial 341 meeting, on May 11, 2020, the Debtor did not indicate a desire to assert any rights in Nine Mile Road.  ANSWER:  Admitted."); Tr.'s Ex. 29, Req. for Admis. 16, ECF No. 113-29 at 10 ("At the Trustee's initial 341 meeting, on May 11, 2020, the Debtor did not indicate a desire to assert any rights in 13 Knight Drive.  ANSWER:  Admitted."); Tr.'s Ex. 29, Req. for Admis. 17, ECF No. 113-29 at 10 ("At the Trustee's initial 341 meeting, on May 11, 2020, the Debtor did not indicate a desire to assert any rights in the Truck.  ANSWER:  Admitted.").

> MR. ROUSSOS:  So how that may fit in, I'm not sure, and I don't -- I don't know how that all works out, although I know she can't waive any claim that the trustee may have --
>
> MR. BROSCIOUS:  Yeah.
>
> MR. ROUSSOS:  But she has no interest in acquiring any of those -- of that particular asset.
>
> MR. BROSCIOUS:  Okay.
>
> MR. ROUSSOS:  Doesn't feel it's hers, doesn't want to be involved in it, and she's waiving any interest that she may have.
>
> BY MR. BROSCIOUS:
>
> Q    Is there any property that's in your name or in your name and Mr. Sullivan's name, in which you continue to assert an interest?
>
> A    No.
>
> Q    Has Mr. Sullivan agreed to make any sort of payments to you?
>
> A    No.
>
> Q    Why is it that you're so open to waiving any claims against property that you and he, or that he alone has in connection with the dissolution of your marriage?
>
> A    Well, I didn't have any money in those things.
>
> Q    Okay.
>
> A    A lot of those things popped up, and I'm not at all comfortable with it, and quite frankly, I just want to be divorced from him.

Stipulation of Facts Ex. F 11:1-13:1, ECF No. 108-6 at 12-14.

Nor was the Debtor's testimony simply inadvertent. The Debtor repeatedly advised the Trustee that she waived any interest that she may have had in the Real Property and in the

5

Vehicle in response to subsequent correspondence from the Trustee. Stipulation of Facts ¶ 14, ECF No. 108 at 3. The Debtor's responses to the Trustee's Request for Admissions reiterated the Debtor's stance and affirmed that her testimony at her meeting of creditors was not misconstrued by the Trustee.[9] The Debtor also represented to the Trustee that she anticipated that the final divorce decree would be entered the later in 2020.[10] 341 Tr. 3:17-23; ECF No. 108-6.

---

[9] Tr.'s Ex. 29, Req. for Admis. 18, ECF No. 113-29 at 10 ("At the Trustee's 341 meeting on June 1, 2020, the Debtor indicated she did not intend to claim any exemption in the Truck. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 19, ECF No. 113-29 at 10-11 ("At the Trustee's 341 meeting on June 1, 2020, the Debtor indicated she did not have any objection to the Trustee selling the Truck to pay her creditors. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 20, ECF No. 113-29 at 11 ("At the Trustee's 341 meeting on June 1, 2020, when the Trustee asked the Debtor, 'It doesn't look like you're seeking, either pursuant to the Homestead Deed or otherwise, to exempt any interest in the Sierra . . . am I correct?' The Debtor answered, 'That's correct.' ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 21, ECF No. 113-29 at 11 ("At the Trustee's 341 meeting on June 1, 2020, when the Trustee asked the Debtor, 'So if your bankruptcy estate were to recover that property [meaning the Truck as well as other personal property] to sell it and make distributions to creditors you would have no objection to that?' The Debtor answered, 'I have no objection.' ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 22, ECF No. 113-29 at 11 ("At the Trustee's 341 meeting on June 1, 2020, the Debtor indicated she did not intend to claim any exemption in Nine Mile Road. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 23, ECF No. 113-29 at 11 ("At the Trustee's 341 meeting on June 1, 2020, the Debtor indicated Mr. Sullivan believed the Nine Mile Road property to be his alone. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 24, ECF No. 113-29 at 11 ("At the Trustee's 341 meeting on June 1, 2020, when the Trustee asked the Debtor, 'Is that Nine Mile Road property, as I understand was in your name, and then you transferred it to your name and his name, is that property subject to any property settlement agreements or discussions or negotiations in connection with the dissolution of your marriage?' The Debtor answered, 'I don't assert any interest in that.' ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 25, ECF No. 113-29 at 12 ("At the Trustee's 341 meeting on June 1, 2020, in reference to the Nine Mile Road property, the Debtor said, 'I think Joe wants it to be deemed his property only.' ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 26, ECF No. 113-29 at 12 ("At the Trustee's 341 meeting on June 1, 2020, counsel for the Debtor indicated that while he understood the Debtor could not waive any interest the Trustee may have, the Debtor was waiving all her interest in the Nine Mile Road property. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 27, ECF No. 113-29 at 12 ("At the Trustee's 341 meeting on June 1, 2020, the Debtor indicated she did not intend to claim any exemption in the 13 Knight Drive property. ANSWER: Admitted."); Tr.'s Ex. 29, Req. for Admis. 28, ECF No. 113-29 at 12 ("At the Trustee's 341 meeting on June 1, 2021, when the Trustee asked, 'Is there any property that's in your name or your name and Mr. Sullivan's name in which you continue to assert an interest?' The debtor answered, 'No.' ANSWER: Admitted, except Debtor denies that the 341 meeting took place in 2021.").

[10] Pursuant to section 541(a)(5) of the Bankruptcy Code, in addition to any interest the Debtor held as of the Petition Date, any property awarded to the Debtor in the stated timeframe pursuant to an interlocutory or final divorce decree would become property of the Debtor's estate. 11 U.S.C. § 541(a)(5)(B).

6

In reliance upon the numerous, unequivocal representations made by the Debtor and her counsel, the Trustee, as the fiduciary responsible for property of the estate,[11] was required to take several actions on behalf of the bankruptcy estate. First, based on the Debtor's representations, the Trustee hired counsel primarily for "services concerning the recovery of personal property and the potential sale of [the Real Property]." Trustee's Application for Employment of Attorneys (Kutak Rock LLP) ¶ 3, ECF No. 44 at 2. After engaging counsel, the Trustee then turned his focus to preserving, recovering, and liquidating the Vehicle and the Real Property. The Trustee sought and obtained court approval to sell the Vehicle at auction. *See* Appl. to Employ Auctioneer & Mot. to Approve Sale of Property of the Estate, ECF No. 62; Order Approving Appl. to Employ Auctioneer & Mot. to Approve Sale of Property of the Estate, ECF No. 71. The Debtor did not object to the sale of the Vehicle. Pursuant to the *Trustee's Report of Sale* [ECF No. 79], the Vehicle was sold at auction on December 4, 2020, resulting in $12,600 in sale proceeds for the benefit of the Debtor's bankruptcy estate.[12]

The Divorce Proceeding pending in the Circuit Court was stayed upon the filing of the Bankruptcy Case. *See* 11 U.S.C. § 362. On May 6, 2020, Mr. Sullivan filed a motion for relief from stay [ECF No. 16] with this Court, requesting the stay be modified to allow him to continue to defend the Divorce Proceeding. That motion was resolved through the submission of a consent order permitting Mr. Sullivan to continue with the Divorce Proceeding. The Court subsequently modified the consent order to clarify that "any determination as to equitable distribution shall be subject to final approval of the Bankruptcy Court." *See* Order Granting

---

[11] "The trustee shall (1) collect and reduce to money the property of the estate for which the trustee serves . . .;[and] (2) be accountable for all property received . . . ." *See* 11 U.S.C. § 704(a).

[12] The Trustee also refrained from taking other actions available to him, such as filing complaints to recover prepetition fraudulent conveyances or filing an objection to the Debtor's discharge. The Debtor was granted a discharge on July 15, 2020. The Trustee has not moved to revoke the Debtor's discharge pursuant to section 727(d) of the Bankruptcy Code.

Relief from Automatic Stay, ECF No. 27, *as modified by* Consent Order Modifying Relief from Stay, ECF No. 70.  The Debtor did not object to the Court's entry of the modified order.[13]

Throughout the summer and fall of 2020, the Trustee engaged in negotiations with Mr. Sullivan concerning the disposition of the Real Property.  Mr. Sullivan expressed interest in purchasing the bankruptcy estate's interest in the Real Property from the Trustee.[14]  While these negotiations were ongoing, the Debtor conducted her own negotiations with Mr. Sullivan in connection with the Divorce Proceeding.  The Debtor asked Mr. Sullivan repeatedly to pay certain of her legal fees incurred in connection with the Divorce Complaint.  Mr. Sullivan refused to do so.

The Debtor was also focused on the time parameter for obtaining her divorce decree.  The Debtor believed that the Trustee would be able to pursue her interest in the Real Property only if the divorce became final within 180 days after the Petition Date.  *See* 11 U.S.C. § 541(a)(5)(B).  After that date passed, the Debtor abruptly changed her asserted position.  On December 14, 2020, the Debtor sought leave from the Circuit Court to amend her Divorce Complaint to include a claim for equitable distribution.  *See* Stipulation of Facts ¶ 17, ECF No. 108 at 4.  Although she had advised the Trustee on repeated occasions under oath and in the presence of her counsel that she had relinquished her rights in the Real Property and the Vehicle, the Debtor failed to alert the Trustee about her new change of direction.  *See* Stipulation of Facts ¶ 17, ECF No. 108 at 4.  The Debtor did not seek relief from the automatic stay when she sought to pursue recovery of the

---

[13] The *Consent Order Modifying Relief from Stay* only granted relief from the stay of section 362 of the Bankruptcy Code as to Mr. Sullivan; it did not extend relief to the Debtor.

[14] Negotiations between a Chapter 7 trustee and the co-owners of real property are a common occurrence.  If the Trustee moved to sell the Real Property under section 363(h) of the Bankruptcy Code, Mr. Sullivan would have had a right of first refusal.  *See* 11 U.S.C. § 363(h), (i).

8

same assets in state court that the Trustee was administering in this Court.[15] The Debtor's motion to amend was subsequently granted by the Circuit Court without the knowledge of the Trustee. *See id.* ¶ 21, ECF No. 108 at 4.

The Trustee only became aware of the Debtor's changed position when, on January 6, 2021, the Debtor filed an amended Schedule C wherein she asserted for the first time (i) an exemption in the Real Property pursuant to section 522(b)(3)(B) of the Bankruptcy Code and *William v. Peyton*, 104 F.3d 688 (4th Cir. 1997), and (ii) an exemption in the Vehicle pursuant to section 34-26(8) of the Virginia Code. *Id.* ¶¶ 18-19, ECF No. 108 at 4. The Trustee timely filed his Objection thereto.

On April 27, 2021, the Circuit Court issued an opinion letter finding that the Real Property was to be considered marital property and that the Real Property should be sold. The sales proceeds were to be split equally among the parties. Mr. Sullivan was ordered to reimburse the Debtor $10,000 for attorney's fees out of his share of the proceeds. Stipulation of Facts ¶ 22, ECF No. 108. Neither the Debtor nor Mr. Sullivan have sought leave from this Court to obtain final approval of the equitable distribution award. On June 9, 2021, the Circuit Court issued a final decree of divorce in the Divorce Proceeding, incorporating the findings from the opinion letter. *See id.* ¶ 24, ECF No. 108 at 5. With those facts at hand, the Court considers the Objection.

"The general rule is . . . that all property owned by a debtor at the time a case is commenced becomes property of the bankruptcy estate." *In re Foster*, 556 B.R. 233, 236-37

---

[15] By so doing, the Debtor may have engaged in an act to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). The Trustee has not filed a motion for contempt for any such alleged violation of the automatic stay. The Court reserves determination as to whether such an amendment – and any resulting litigation in the Divorce Proceeding – would be void ab initio as violative of the automatic stay.

(Bankr. E.D. Va. 2016). "Under Section 522(b)(1), a debtor may claim certain property as exempt from such bankruptcy estate, and such 'property . . . will be excluded from the bankruptcy estate [u]nless a party in interest objects.'" *In re Gnadt*, No. 11-10378-BFK, 2015 WL 2194475, at *4, 2015 Bankr. LEXIS 1552, at *9 (Bankr. E.D. Va. May 7, 2015) (alteration in original) (quoting *Schwab v. Reilly*, 560 U.S. 770, 774 (2010)); *cf. Sumy v. Schlossberg* (*In re Sumy*), 777 F.2d 921, 924 (4th Cir. 1985) ("The debtor in this case admits that his entireties property became part of the estate under § 541, but he seeks to exempt it under § 522(b)(2)(B).").[16]  Bankruptcy Rule 4003(a) requires a debtor to list property claimed as exempt under section 522 of the Bankruptcy Code on the schedules proscribed by Bankruptcy Rule 1007.[17]  Fed. R. Bankr. P. 4003(a).  Pursuant to Bankruptcy Rule 1009, a schedule "may be amended by the debtor as a matter of course at any time before the case is closed."  Fed. R. Bankr. P. 1009(a).  "But amending Schedule C to *claim* an exemption is separate from the

---

[16] For property that becomes part of the estate under § 541 and that is not exempted under § 522(b), the trustee has the general power, "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 363(f) grants the trustee the power to sell most types of estate property "free and clear of any interest in such property of an entity other than the estate" if the entity consents or under certain other conditions. Section 363(h) then excepts tenancies in common, joint tenancies, and tenancies by the entirety from subsection (f)'s general provisions, providing that the trustee may sell the co-owner's interest along with the estate's interest only in more limited circumstances. If property is to be sold under § 363(h), the nonbankrupt spouse has a right of first refusal and if the spouse does not exercise that option, the trustee must of course distribute the proceeds of sale in proportion to the respective interests of the estate and the spouse.

*In re Sumy*, 777 F.2d at 923-24 (alteration in original) (citing 11 U.S.C. § 363(b)(1), (i), (j)).

[17] The Debtor maintains that, because the Real Property was held by the entirety with her then-husband, she did not need to claim it as exempt. This argument is of no moment. Bankruptcy Rule 4003 is clear – in order to claim an exemption, the Debtor *shall* list the property on her Schedule C. Fed. R. Bankr. P. 4003(a). There is no automatic exemption for certain types of property based upon how the property is titled. Rather, all property interests of the Debtor, including the Debtor's interest in the Real Property, became part of the Debtor's bankruptcy estate on the Petition Date. *See* 11 U.S.C. § 541(a)(1). The burden was on the Debtor to properly exempt the Real Property. The Debtor admits as much, as she has now attempted to claim such an exemption through her amended Schedule C. But, for the reasons stated herein, the Court finds that the Debtor is estopped from claiming the exemption.

10

question whether the exemption is *allowable*; creditors and parties in interest may object to exemptions added by amendment." *In re Gonzalez*, 620 B.R. 296, 311–12 (Bankr. C.D. Cal. 2019) (emphasis in original) (internal citations and quotations omitted); *see In re Scott*, No. 11-37343-KRH, 2012 WL 2576783, at *2, 2012 Bankr. LEXIS 3107, at *7 (Bankr. E.D. Va. July 3, 2012) ("[T]he Trustee did lodge a timely objection, so the issue of the allowance of the [claimed exemption] must be resolved by the Court."); *see also* Fed. R. Bankr. P. 4003(b) (providing that a party in interest may object to any claimed exemptions). Accordingly, this Court must determine whether the amendment should be permitted to allow the claimed exemption. In light of the Debtor's contumacious conduct, the Court finds that the Debtor is estopped from asserting the Real Property and the Vehicle exempt from creditor process. Therefore, the Court holds that Trustee may administer the Vehicle and the Debtor's interest in the Real Property for the benefit of the Debtor's bankruptcy estate.

The Debtor is precluded first by the equitable doctrine of judicial estoppel. "[J]udicial estoppel is an equitable doctrine, designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotation omitted)). "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (first quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980); then quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

"In order for judicial estoppel to apply, (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position

11

must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Folio v. City of Clarksburg, W.Va.*, 134 F.3d 1211, 1217-18 (4th Cir. 1998). "The fourth factor-whether the litigant intentionally misled the court to gain unfair advantage-is the determinative factor in the application of judicial estoppel to a particular case." *Payne v. Wyeth Pharms., Inc.*, 606 F. Supp. 2d 613, 616 (E.D. Va. 2008); *see also Martineau*, 934 F.3d at 393 ("Typically, judicial estoppel is reserved for cases where the party to be estopped . . . has taken a later position that is 'clearly inconsistent' with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that 'either the first or the second court was misled'; and would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' Finally, . . . judicial estoppel applies only when 'the party who is alleged to be estopped *intentionally* misled the court to gain unfair advantage,' and not when 'a party's prior position was based on inadvertence or mistake.'" (emphasis in original) (internal citations omitted)).

Courts applying this doctrine almost exclusively encounter the same factual scenario – whether a debtor's failure to timely disclose an asset should judicially estop the debtor from later disclosing and attempting to exempt the asset. *See, e.g.*, *In re Wilmoth*, 412 B.R. 791, 793 (Bankr. E.D. Va. 2009). While similar in nature, that scenario is not the precise pattern presented in the case at bar. In this case, the Debtor did disclose the presence of the Real Property and the Vehicle. But the Debtor did not attempt to exempt the subject property as required by Bankruptcy Rule 4003. In fact, the Debtor repeatedly, unequivocally, and actively disclaimed any interest in the Real Property and the Vehicle that she disclosed. The Debtor, who was well acquainted with bankruptcy law, affirmatively represented to the Trustee that she had

12

no objection to the Trustee liquidating either the Real Property or the Vehicle for the benefit of her creditors, which he proceeded to do. Only after the Debtor had received her discharge and shortly after the expiration of the 180-day period provided by section 541(a)(5)(B) of the Bankruptcy Code, did the Debtor – without the leave she knew or ought to have known she needed from this Court – attempt to assert an interest in the Real Property and the Vehicle.[18]

In light of these facts and the evidence presented at the Hearing, the Court finds that the Debtor intentionally misled the Trustee and this Court to obtain an unfair advantage. The Court finds that this is not a case of inadvertence or mistake. The Debtor testified that she worked for fourteen years for the United States Trustee's Office – the very branch of the Department of Justice tasked with monitoring bankruptcy cases for fraud and financial irregularities.[19] The Debtor knew or should have known of the implications of her conduct – namely, the importance of properly disclosing and exempting assets, the absolute need for truthful testimony at her

---

[18] The Debtor incorrectly asserts that because she held the Real Property by the entirety with her husband, she was not legally capable of waiving the exemption. She asserts that now that the Trustee has allowed the 180-day clock to expire, the Real Property is no longer property that can come into the bankruptcy estate.

The Court rejects the Debtor's argument. The broad, inclusive language of section 541 is unequivocal. The Real Property became property of the estate on the Petition Date. But assuming *arguendo* that the Debtor did not have an interest in the Real Property as of the Petition Date (which she did), the Court finds that the Real Property would have become property of the estate pursuant to section 541(a)(5) of the Bankruptcy Code no later than May 22, 2020, upon entry of the *Order Granting Relief from Automatic Stay* [ECF No. 27] (well within the 180-day period behind which the Debtor now takes cover). By the terms of that consent order, the Debtor, Mr. Sullivan, and the Trustee all agreed that the Circuit Court would determine the marital property interests that the parties would "become entitled to acquire," including but not limited to the Real Property. The modified order clarified, that once adjudicated by the Circuit Court, the parties would return to this Court for final approval of administration of estate property. As such, the Debtor, Mr. Sullivan, and the Trustee reached a property settlement agreement within 180 days of the Petition Date. Even if the Real Property was not property of the estate on the Petition Date as the Debtor now maintains, the Debtor's interest in the Real Property became part of the Debtor's bankruptcy estate when the Circuit Court determined her marital interest in the Real Property.

[19] Examples of such financial irregularities would include the purchase of the Real Property by the Debtor using Mr. Sullivan's funds to presumably avoid the reach of his creditors, the subsequent transfer of the Real Property by the Debtor to the Debtor and Mr. Sullivan, the creation and use of a separate single-member LLC as a property manager for the Real Property, and then the dissolution of said single-member LLC only to be resurrected by Mr. Sullivan on the eve of bankruptcy, all without any consideration. For the purposes of this decision, the Court need not reach whether such transactions constitute fraudulent transfers.

13

meetings of creditors, and her duty to cooperate with the Trustee. Fed. R. Bankr. P. 4002(a)(1), (4). Instead, the Debtor took one position (that the Trustee should administer the Vehicle and the Real Property for the benefit of her creditors regardless of her legal ownership interest in the assets) until after she received her discharge and the 180-day deadline had elapsed for the Trustee to intervene in her divorce. Once those perceived deadlines had passed, the Debtor then flip-flopped positions in an attempt to avail herself of the equity in the Vehicle and the Real Property.[20] By so doing, the Debtor intentionally misled the Trustee and this Court to gain an unfair advantage. As such, the Debtor is judicially estopped from attempting to exempt her assets now.

The Debtor is also equitably estopped from exempting the Vehicle and the Real Property. "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence." *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Est. Tr.*, 413 S.E.2d 599, 603 (Va. 1992); *see also T. v. T.*, 224 S.E.2d 148, 152 (Va. 1976) ("To establish equitable estoppel, it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped." (internal citation omitted)). The Trustee has established each of the four elements for equitable estoppel.

---

[20] The Court rejects the Debtor's reasoning that her waiver was conditioned upon obtaining a no-contest divorce. At no point did the Debtor state that her waiver was conditional. *See supra* notes 8 & 9 and accompanying text. However, setting that aside, the facts belie such a contention. Mr. Sullivan filed his draft answer asserting his claim to equitable distribution and fees before the Debtor filed her voluntary petition. The Debtor was aware that the prospects for a no-contest divorce were remote.

In so holding, the Court finds *In re Gonzalez*, 620 B.R. 296,[21] to be instructive. In *Gonzalez*, after the trustee had engaged a real estate agent to sell the subject real property, the debtor attempted to amend his Schedule C to exempt the equity in the property. *Id.* at 308-09. The bankruptcy court sustained the objection based on the doctrine of equitable estoppel.

The first element requires a representation. In *Gonzalez*, the bankruptcy court found this element satisfied by the debtor's representations in his original schedules, the debtor's testimony at his meeting of creditors that he was satisfied with his original exemptions, and the debtor's position in various pleadings in the bankruptcy case where the debtor did not assert the claimed exemption. *See id.* at 313-18. Here, the Debtor made unequivocal representations under oath to the Trustee that she expressly waived any interest she may have had in the Vehicle and the Real Property. She also asserted that the Trustee could liquidate the Vehicle and the Real Property for the benefit of her creditors. The Debtor did not object to the Trustee hiring an auctioneer to sell the Vehicle and the Debtor did not object to the sale of the Vehicle. The Debtor also remained silent as the Trustee and Mr. Sullivan litigated Mr. Sullivan's motion for relief from the automatic stay to allow Mr. Sullivan to proceed with defending the Divorce Proceeding. As such, the Court finds that the first element is met.

The second element requires the Trustee to have relied on the Debtor's representation. The Trustee credibly testified that he believed the Debtor relinquished any and all rights to the

---

[21] Before the second day of the Hearing, the Court asked the parties to address why it should not follow *In re Gonzalez*. At that time, the Debtor urged the Court to follow instead the reasoning of *In re Scotchel*, No. 12-09, 2014 WL 4327947, 2014 Bankr. LEXIS 3640 (Bankr. N.D.W. Va. Aug. 28, 2014) (Flatley, J.), *aff'd sub nom. Sheehan v. Scotchel*, No. 1:14CV196, 2015 WL 5176487, 2015 U.S. Distr. LEXIS 117293 (N.D.W. Va. Sept. 3, 2015); *In re Davis*, No. 13-BK-1096, 2015 WL 1280879, 2015 Bankr. LEXIS 818 (Bankr. N.D.W. Va. Mar. 16, 2015); *In re Dunaway*, No. 14-BK-88, 2015 WL 1280939, 2015 Bankr. LEXIS 819 (Bankr. N.D.W. Va. Mar. 16, 2015) (Flatley, J.). However, those decisions expand *Law v. Siegel*, 571 U.S. 415 (2014) beyond its holding – namely, that a trustee may not surcharge an exemption. *Cf. In re Padula*, 542 B.R. 753, 760-62 (Bankr. E.D. Va. 2015) (Kenney, J.) (recognizing in dicta that a debtor may still be judicially estopped from amending their exemptions post-*Law*), *aff'd sub nom. VPSI, Inc. v. Padula* (*In re Padula*), 651 F. App'x 228, 228 (4th Cir. 2016) (per curiam). Here, the Trustee is not attempting to surcharge an exemption – instead, the Trustee is contesting whether the exemption may be validly claimed in the first instance.

15

Real Property and the Vehicle and that the Debtor consented to the liquidation of the foregoing assets for the benefit of the Debtor's estate. The Court finds that such reliance was reasonable under the circumstances, given that the Trustee repeatedly questioned the Debtor and her counsel about such waiver and, in turn, was repeatedly assured that the Debtor "[d]oesn't feel it's hers, doesn't want to be involved in it, and she's waiving any interest that she may have." Stipulation of Facts Ex. F 11:1-13:1, ECF No. 108-6 at 12-14. The Court finds the Trustee has met the second element.

The third element requires the Trustee to establish that he changed his position based on his reliance on the Debtor's representation. The uncontroverted evidence at the Hearing was that, based upon the Debtor's clear and unequivocal waiver of any claimed exemptions and her affirmative consent to the liquidation of the assets for the benefit of her creditors, the Trustee did not object to her discharge, did not intervene in the Divorce Proceeding, and, instead, incurred significant administrative expenses in attempting to preserve and liquidate the Vehicle and the Real Property. Accordingly, the Trustee has satisfied this element.

As to the fourth and final element, the Trustee has established detriment. The evidence further established that, but for the Debtor's representations, the Trustee may have engaged in different legal strategy. The Trustee testified that he would not have engaged counsel, *see* Hr'g Tr. 36:18-22, ECF No. 121 at 36, and would not have incurred administrative expenses in attempting to administer the Real Property and Vehicle, *see id.* 38:25-39:3, ECF No. 121 at 38-39. As such, the Trustee has met the fourth element. Therefore, the Court finds the Trustee has established all four elements and the Debtor is equitably estopped from claiming the Vehicle or the Real Property as exempt.

16

Based on the Debtor's conduct in this case, the Debtor is judicially and equitably estopped from asserting that the Trustee cannot administer the Vehicle or the Real Property for the benefit of the Debtor's creditors. Accordingly, the Objection is SUSTAINED. A separate Order was entered on August 6, 2021. *See* ECF No. 124.

Dated:   September 21, 2021           /s/ Kevin R. Huennekens
                                      UNITED STATES BANKRUPTCY JUDGE

                                      Entered on Docket:   September 21, 2021

17